UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON L. SHAPIRO, D.M.D.,<br>    Plaintiff<br><br>V.<br><br>RESIDENT PHYSICIANS TRUST GROUP<br>BENEFIT PLAN, THE HARTFORD LIFE<br>AND ACCIDENT INSURANCE COMPANY,<br>AND PARTNERS HEALTHCARE SYSTEM,<br>INC.<br><br>    Defendants | CIVIL ACTION NO. 04-11966MLW |

**FIRST AMENDED COMPLAINT**

INTRODUCTION

1. Plaintiff, Jason L. Shapiro, D.M.D. ("Dr. Shapiro"), brings this action against the Defendants, The Hartford Life and Accident Insurance Company ("Hartford"), Resident Physicians Trust Group Benefit Plan ("Plan") and Partners HealthCare System, Inc. ("Partners") (collectively referred to as "Defendants") for violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Dr. Shapiro is a participant in an ERISA welfare benefit plan that was issued to the Residents Physicians Trust ("RPT"), by the Hartford. The Plan is insured by Partners. The Plan number is GLT071163.

2. This Complaint challenges the Defendants' unlawful designation of Dr. Shapiro's specialty occupation under the terms of his Plan without appropriate justification and without granting him a full and fair review of his claim for benefits.

3. Dr. Shapiro is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the defendant's breach of its ERISA obligations took place in this district.

## PARTIES

5. Dr. Shapiro is a 32 year-old individual who currently resides in California. Dr. Shapiro is a vested participant in a Hartford employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Dr. Shapiro has standing to bring this action under 29 U.S.C. § 1132(a).

6. The defendant, Hartford, is a for-profit corporation with its principal place of business at 200 Hopmeadow Street, Simsbury, Connecticut. Hartford transacts business in Massachusetts and is the third-party administrator of the Plan under which Dr. Shapiro is suing. Hartford is the party responsible for processing claims made under the Plan.

7. At all times relevant to the claims asserted in this Complaint, Hartford purported to act as an ERISA claims fiduciary with respect to participants of the Plan, generally, and specifically, with respect to Dr. Shapiro, within the meaning of ERISA.

8. Partners Healthcare Systems, Inc. is a for profit corporation with its principal place of business at 101 Merrimac Street, Boston, MA 02114. Partners insurers the Plan under which Dr. Shapiro is suing and is the party responsible for making a final determination as to a Plan member's eligibility for benefits.

9. At all times relevant to the claims asserted in this Complaint, Partners purported to act as an ERISA claims fiduciary with respect to participants of the Plan, generally, and specifically, with respect to Dr. Shapiro, within the meaning of ERISA.

10. The Plan under which Dr. Shapiro is suing is a "long term disability plan" issued by the Hartford to Partners. The policyholder is the Resident Physicians Trust, and the Participant Entity is Partners HealthCare System, Inc.

## STATEMENT OF FACTS

### Insurance Entitlement, Definitions of Disability, Discretion

11. At the time he became disabled, Dr. Shapiro was a dental resident at Brigham & Women's Hospital in Boston, Massachusetts.

12. Brigham & Women's Hospital is a part of Partners Healthcare System, Inc.

13. As an employee of Brigham & Women's Hospital, Dr. Shapiro was eligible to receive long-term disability benefits under two separate plans of insurance both issued by the Hartford to Partners.

14. The first plan is insured by the Hartford through a policy of insurance issued to Partners. The Plan number is GLT-683013 (hereinafter referred to "Primary LTD Policy").

15. The second plan, and the one at issue in the current case, is also comprised of a policy of insurance issued by the Hartford to Partners. Partners insures this Plan. The Plan number is GLT-071163 (hereinafter referred to as "Plan").

### Primary LTD Policy

16. The Primary LTD Policy defines **Disabled or Disability** as "the monthly earnings you receive from any employer or for any work, while Disabled and eligible for Residual Disability benefits under this plan.

3

17. Total Disability or Totally Disabled is defined as:

**Total Disability or Totally Disabled** means you are prevented by:

1. Accidental Bodily Injury
2. Sickness
3. Mental Illness;
4. Substance Abuse; or
5. Pregnancy,

from performing the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 20% of your Indexed Pre-disability Earnings.

Your failure to maintain a license to perform the duties of an occupation does not alone mean that you are Disabled. You will not be considered Disabled solely because your professional or occupational license or certification is suspended, revoked, restricted or surrendered.

18. Residual Disability is defined as follows:

**Residual Disability or Residually Disabled** means you are prevented by:

a. Accidental bodily injury;
b. Sickness;
c. Mental Illness;
d. Substance Abuse; or
e. Pregnancy,

from performing some, but not all, the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are at least 20%, but no more than 80% of your Indexed Pre-disability Earnings.

Your failure to maintain a license to perform the duties of an occupation does not alone mean that you are Disabled. You will not be considered Disabled solely because your professional or occupational license or certification is suspended, revoked, restricted or surrendered.

19. Essential Duty is defined as:

**Essential Duty** means a duty that:

a. Is substantial, not incidental;
b. Is fundamental or inherent to the occupation; and
c. Cannot be reasonably omitted or changed.

> To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty. However, to be at work in excess of 40 hours a week is not an Essential Duty.

20. **Currently Monthly Earnings** means the monthly earnings you receive from any employer or for any work, while Disabled and eligible for Residual Disability benefits under this plan.

21. Dr. Shapiro has an Option II Plan, which means that "Your Occupation" is defined as follows:

> **Your Occupation**, if you are a Physician, Your Occupation means the general or sub-speciality in which you are practicing for which there is a speciality or sub-speciality recognized by the American Board of Medical Specialities. If the speciality or sub-speciality in which you are practicing is not so recognized, we will consider you to be practicing in the general speciality category. . .

**Plan Benefit**

22. The Summary Plan Description ("SPD") provided to Dr. Shapiro at the time he became a resident at Partners describes the Plan as follows:

> In addition, this program includes unique feature that protects you against future income loss should you become disabled. This feature allows you to increase coverage upon completion of your residency to more realistically reflect your earning capacity *based on your specialty*.

(Emphasis added.)

23. The SPD further states:

> If you become disabled during your residency and remain disabled until the time you were scheduled to complete your residency, your benefit is adjusted to reflect 60% of the first year earnings for *your specialty*.

(Emphasis added.)

24. Dr. Shapiro became disabled while a resident at Brigham & Women's Hospital.

25. Dr. Shapiro's specialty is Dentistry.

26. Pursuant to the terms of the SPD, Dr. Shapiro is entitled to an adjusted LTD benefit to reflect 60% of his first year earnings in his specialty of Dentistry.

**Application for Benefits and Award of Benefits**

27. In a letter dated July 23, 2001, the Hartford informed Dr. Shapiro that his claim for LTD benefits was approved effective July 16, 2001.

28. Dr. Shapiro was deemed by the Hartford to be totally disabled from his own specialty occupation of a Dentist.

29. In its July 23, 2001 letter, the Hartford granted Dr. Shapiro LTD benefits under his Primary LTD Policy at 80% of his Monthly Rate of Basic Earnings, or $2,589.00.

30. The July 23, 2001 letter did not reference Dr. Shapiro's Plan.

**Plan Benefit**

31. On August 30, 2001, representatives from Partners and the Hartford met to discuss the Plan.

32. In an Electronic Mail message ("email") dated August 30, 2001, Partners and Hartford confirmed that Dr. Shapiro's Plan would be calculated utilizing the Median Instructor Salary Total Clinical Sciences.

33. The Median Instructor Salary Total Clinical Sciences was detailed to be $98,000 in this email.

34. The Plan was detailed in the SPD as providing a supplemental benefit for residents to reflect their first year earnings in their specialty.

35. Dr. Shapiro's specialty occupation was that of a Dentist, not a Clinical Instructor.

36. On information and belief, Hartford and Partners had not developed a written policy defining the parameters of a resident's specialty at the time it made the determination regarding Dr. Shapiro's benefit under his Plan.

37. On September 6, 2001, Dr. Shapiro spoke with Jael Torrez, his claim handler at the Hartford, regarding his medical condition and the terms of the Plan. According to the Hartford's internal notes referencing that conversation, Dr. Shapiro and Ms. Torrez "discussed the supplemental benefit that is currently being devised by underwriting. Advised him I [Ms. Torrez] will call him when this benefit is implemented."

38. On September 11, 2001, Ms. Torrez wrote Dr. Shapiro informing him that his Plan benefit was $2,589 per month. In particular, for the first time, the Hartford informed Dr. Shapiro that his Plan benefit was being calculated as if he were an Instructor in Total Clinical Sciences, and not his specialty of a Dentist.

39. The Hartford's decision to calculate Dr. Shapiro's Plan benefit as if Dr. Shapiro's specialty was an Instructor in Total Clinical Sciences, and not Dentistry, was contrary to the terms of the SPD.

40. According to the Hartford's internal notes, Ms. Torrez informed Dr. Shapiro on September 27, 2001, that it was "working on getting him a policy booklet/schedule which details the supplemental benefit so he has it."

41. Dr. Shapiro has never received a copy of the Plan booklet despite Ms. Torrez's promise.

42. On May 14, 2002, Dr. Shapiro spoke with Ms. Torrez regarding the decision to classify his specialty as an Instructor as opposed to a practicing Dentist. Ms. Torrez promised to investigate this matter for Dr. Shapiro.

43. On October 15, 2001, Dr. Shapiro wrote Paul Cheney, Director of Benefits of Partners, regarding his classification as a Clinical Instructor as opposed to a practicing Dentist for purposes of calculating his benefit under the Plan.

44. Mr. Cheney did not respond to this letter.

45. On May 31, 2002, Ms. Torrez wrote Dr. Shapiro in response to his concerns regarding the designation of his specialty as a Clinical Instructor rather than a Dentist under his Plan. In particular, Ms. Torrez stated:

> You requested further clarification in regards to your Supplemental Benefit which was based on the "Median Instructor Salary – Total Clinical Sciences." This designation was chosen by Partners Healthcare Systems and cannot be changed by The Hartford. Specifically, they chose Medical Salary for an Instructor in the Northeastern Region according to the "Report on Medical School Faculty Salaries 1998-1999" issued by the Association of American Medical Colleges. If you wish to appeal this information, your appeal needs to be directed to Partners Healthcare Systems.

46. On August 7, 2002, Dr. Shapiro wrote Mr. Cheney again regarding the misclassification of his specialty under the Plan.

47. Mr. Cheney did not respond to this letter.

48. On March 30, 2003, Dr. Shapiro wrote Mr. Cheney again regarding his Plan benefit. In his letter of that date, Dr. Shapiro stated in relevant part:

> As I have stated in my previous correspondence, I am a dentist and was in a General Practice Residency which is optional advanced training for dentists. I was never planning on or training to be a clinical instructor in a medical school, impossible as I am not an MD but a dentist. This designation is arbitrary and does not reflect my specialty.
>
> As per the US Department of Labor, Bureau of Labor Statistics, Occupational Outlook Handbook 2002-03 edition (also on the internet at http://www.bls.gov/oco/ocos072), the "median annual earnings of salaried dentists were $129,030.00 in 2000. This is a discrepancy of 31,030.00 a year. Therefore, I am again formally requesting that you

      change my classification to that of a dentist and forward me the full underpayment due to me including interest, within the next 10 days.

49. Mr. Cheney did not respond to this letter.

50. On May 28, 2003, counsel for Dr. Shapiro wrote Marcella Curtis of the Hartford, requesting a complete copy of all relevant plan documents and Dr. Shapiro's claim file.

51. The Hartford did not provide counsel for Dr. Shapiro a copy of the Plan booklet in response to this request.

52. On May 21, 2004, counsel for Dr. Shapiro again requested from the Hartford, a copy of Dr. Shapiro's plan documents and his claim file.

53. The Hartford did not provide counsel for Dr. Shapiro a copy of the Plan booklet in response to this request.

## Overview

54. The decision to classify Dr. Shapiro's specialty occupation under the Plan as that of a Clinical Instructor as a opposed to his specialty of a practicing Dentist was unreasonable, irrational, contrary to the substantial evidence in the file, contrary to the terms of the SPD and contrary to law.

55. The Defendants' determination that Dr. Shapiro's specialty occupation was a Clinical Instructor was unreasonable in light of the terms of the SPD.

56. The Defendants' determination that Dr. Shapiro's specialty was a Clinical Instructor was unreasonable in light of the fact that Dr. Shapiro is a Dentist and not a medical doctor.

57. Any prospective decision by the Defendants to classify Dentists as Clinical Instructors under the Plan is contrary to the terms of the SPD provided to Dr. Shapiro.

58. The Hartford has failed to meet the minimum requirements for its adverse action, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the

administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

59. Any discretion to which the Hartford and/or Partners may claim it is entitled under the Plan is negated by its failure to provide Dr. Shapiro with an explanation as to its adverse action.

60. Any discretion to which the Hartford and/or Partners may claim it is entitled under the Plan is negated by its failure to develop a written policy prior to making the determination on Dr. Shapiro's claim for benefits.

61. Due the unlawful denial of benefits under ERISA, Dr. Shapiro has suffered financially.

62. Having appealed the Defendant's classification of his occupation through both the Hartford and Partners, and having attempted to seek an explanation from the Hartford and Partners for its action for the last three years, Dr. Shapiro now brings this action.

### FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for Unpaid Benefits)
### (ALL DEFENDANTS)

63. Dr. Shapiro realleges each of the paragraphs above as if fully set forth herein.

64. The Plan is a contract.

65. Dr. Shapiro has performed all of his obligations under the contract.

66. 29 U.S.C. § 1132(a)(1)(B) states that:

>  A civil action may be brought ---
>
>  (1) by a participant or beneficiary –
>
>  (A) for the relief provided for in subsection (c) of this section, or

    (B)  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

67. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

68. The Defendants unlawfully denied Dr. Shapiro's benefits in part by: (1) misclassifying Dr. Shapiro's occupation under the Plan; and (2) denying Dr. Shapiro a full and fair review of their decision to deny his benefits.

69. In accordance with 29 U.S.C. §1132, Dr. Shapiro is entitled to a recalculation of his monthly Plan benefit from July 2001, continuing into the present, and all interest accrued on those benefits during that period of time.

70. The Defendants have refused to provide Dr. Shapiro with these benefits and are, therefore, in breach of the terms of the Plan and ERISA, which require that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

71. As a direct and proximate result of this breach, Dr. Shapiro has been denied the full amount of the LTD benefits to which he is due.

**SECOND CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

72. Dr. Shapiro realleges each of the paragraphs above as if fully set forth herein.

73. Under the standards applicable to ERISA, Dr. Shapiro deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

74. The Defendants have the ability to satisfy the award.

75. Dr. Shapiro's conduct of this action is in the interests of all participants eligible for benefits under the Plan, and the relief granted hereunder will benefit all such participants.

76. The Defendants have acted in bad faith in denying Dr. Shapiro's benefits under the Plan.

77. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)     Declare, adjudge and decree that Dr. Shapiro is entitled to have his Plan benefit calculated according to his correct specialty occupation of a Dentist.

(2)     Award Dr. Shapiro the full amount of unpaid benefits under the Plan to which he is entitled, together with such pre-judgment interest as may be allowed by law.

(3)     Order that the Defendants pay all interest that has accrued on his benefits;

(4)     Order that the Defendants make restitution to Dr. Shapiro in the amount of any losses sustained by Dr. Shapiro in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(5)     Award Dr. Shapiro the costs of this action and reasonable attorneys' fees; and

(6)     Award such other relief, as the court deems just and reasonable.

Dated: November 29, 2004

Respectfully submitted for the Plaintiff,
JASON SHAPIRO, D.M.D.

By: /s/ Mala M. Rafik
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK, P.C.
44 School Street, Suite 410
Boston, MA 02108
617-723-7470

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on counsel for the parties by first class mail, postage prepaid, and electronic mail, on November 29, 2004.

/s/ Mala M. Rafik
Mala M. Rafik
BBO No. 638075